**In re JOINT EASTERN AND SOUTH-ERN DISTRICT ASBESTOS LIT-IGATION,**

**This Document Relates to:
John Maiorana.**

**No. 88 Civ. 3317 (RWS).**

United States District Court,
S.D. New York.

Sept. 16, 1991.

Levy Phillips & Konigsberg, New York City (Alan J. Konigsberg, Alani Golanski, of counsel), for plaintiff.

Christy & Viener, New York City (Wayne C. Matus, James M. Minamoto, of counsel), for defendant Owens–Corning Fiberglas Corp.

## OPINION

SWEET, District Judge.

Plaintiff Arlene Maiorana ("Maiorana") has moved by letter to reconsider, pursuant to Federal Rule of Civil Procedure 60(b)(2), the opinion of February 26, 1991, *In re Joint Eastern and Southern District Asbestos Litigation (Maiorana)*, 758 F.Supp. 199 (S.D.N.Y.1991) (the "February Opinion"), which granted the motion of defendant Owens–Corning Fiberglas Corp.

("OCF") and others for summary judgment dismissing her claim based on her inability to show that her husband's colon cancer was more probably than not the product of occupational exposure to asbestos. Maiorana previously moved to reargue the February Opinion, a motion which was denied by opinion of April 2 (the "April Opinion"). For the following reasons, Maiorana's motion to reconsider the earlier decision is denied.

*Background*

The parties, facts and prior proceedings are set forth in the February and April Opinions, familiarity with which is presumed. After her motion for reargument or reconsideration of the February Opinion was denied in the April Opinion, Maiorana submitted a letter dated April 4, 1991, seeking "to renew plaintiff's motion for reargument." This letter was treated as a motion to reconsider the February Opinion based on Maiorana's alleged "newly discovered evidence;" oral argument was heard on April 19. After further submissions from both parties, the matter was fully submitted as of May 3, 1991.

*Facts*

The basis for the present motion is Maiorana's assertion that this Court did not give proper attention to a supplemental report of Dr. Markowitz ("Markowitz") dated March 5, 1991 (the "Supplemental Report"), which was submitted as part of the original motion to reargue or reconsider the February Opinion. That report was itself based on Markowitz's review of certain chest x-rays of Mr. Maiorana taken in December 1982 (the "1982 X–Rays"). Based on these x-rays, Markowitz concluded that Mr. Maiorana had suffered from parenchymal asbestosis.

The 1982 X–Rays had not been provided to Markowitz or to OCF prior to the issuance of the February Opinion. Maiorana's counsel sought to explain this situation based on the fact that Maiorana was unaware of the existence of the 1982 X–Rays prior to January 8, 1991. Although she had initially responded in July 1988 to interrogatories which sought to identify all potential sources of medical records for Mr.

Maiorana, and although she amended her answers to those interrogatories on January 8, 1991—in an unsuccessful effort to avoid summary judgment dismissing her wrongful death claim on statute of limitations grounds, *see In re Southern and Eastern District Asbestos Litigation (Maiorana)*, 756 F.Supp. 794 (S.D.N.Y.1991)—Maiorana's counsel asserts that Maiorana did not recall that her husband had at one time been examined by Corporate Health Examiners ("CHE") until sometime after January 8. At that point, Maiorana's counsel contacted CHE and, after securing an appropriate authorization from Maiorana, obtained the 1982 X–Rays from CHE at some time after February 13. "Shortly thereafter," the x-rays were forwarded to Markowitz for further evaluation.[1]

In his Supplemental Report, Markowitz analyzed the 1982 X–Rays, and as a result amended his prior opinion, expressed in his original report in November 1990 and summarized in his affidavit of January 11, 1991, to include the conclusion that in 1982 Mr. Maiorana had been suffering from "parenchymal asbestosis." Markowitz explained:

> This does not change my opinion in any way that his occupational exposure to asbestos was a contributing factor to the development of his colon cancer, which led to his death. The presence of parenchymal asbestosis merely confirms the history of exposure to asbestos.

*Discussion*

Maiorana contends that the 1982 X–Rays and Markowitz's Supplemental Report constitute "newly discovered evidence which by due diligence could not have been discovered" prior to the issuance of the February Opinion, and that this new evidence justifies reversal of the February Opinion. OCF insists that Maiorana has neither established that the evidence in question satisfies Rule 60(b)'s test for being "newly

discovered," nor that consideration of the evidence itself would lead to an outcome different from that reached in the February Opinion.

1. **Maiorana Has Not Shown That The Evidence Is Newly Discovered.**

Rule 60(b) does not authorize a court to vacate or reverse an earlier decision merely because a party has presented new evidence which might support such a result: the party seeking to escape the prior ruling must establish that "by due diligence [the new evidence] could not have been discovered earlier." Fed.R.Civ.P. 60(b)(2); *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir.), *cert. denied*, 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983).

◼ Here Maiorana has presented only an affidavit of her counsel attempting to explain her inability to identify CHE as a source of medical records prior to her recent amendment of her interrogatory answers. While her counsel may be qualified to attest to the diligence of the attorneys in attempting to elicit this information, he is not in a position to describe Maiorana's own efforts to discover the evidence before the issuance of the February Opinion. In the absence of any explanation for the delay, the 1982 X–Rays cannot be considered "newly discovered evidence" for the purposes of Rule 60(b).

This conclusion is also supported by Maiorana's own argument on her original motion for reargument of the February Opinion. When she first attempted to introduce the Supplemental Report, OCF claimed that she had improperly withheld the 1982 X–Rays because she had not produced them in the course of discovery. Maiorana responded that the X–Rays were not withheld, because her 1988 answers to OCF's interrogatories disclosed Mr. Maiorana's 1988 medical examination by the Sheet Metal Workers Union, and that

---

1. The precise date when the 1982 X–Rays were turned over to Markowitz is not specified, but the affidavit of Maiorana's counsel makes clear that it was not until after the February Opinion was issued that it occurred to Maiorana to take

the "highly unusual step of rushing the newly obtained materials to Dr. Markowitz for immediate further evaluations." Golanski Affidavit April 24, 1991 at 6 n. 1.

therefore OCF "was on notice of such examination and could have pursued acquiring any x-rays obtained therefrom." Maiorana simply cannot claim that the 1988 interrogatory answers were sufficient to apprise OCF of the existence of the 1982 X–Rays but that she herself was unable to discover them until two and a half years after she gave those answers.

■ Finally, even if Maiorana had established that her inability to locate the 1982 X–Rays prior to January 8 was not due to a lack of diligence, the evidence indicates that she and her counsel did not thereafter act expeditiously to bring the x-rays and the Supplemental Report to the Court's attention. Although Maiorana's counsel does not specify the precise date when Maiorana recalled that CHE might have medical records for her husband, her authorization for the release of the records was signed on February 7, nearly three weeks prior to the date of the February Opinion. Her counsel did not request the records from CHE until February 13, and did not actually forward the x-rays to Markowitz until sometime after the February Opinion was issued.

Both on her original motion to reargue and on the present motion Maiorana has attempted to explain this lack of expedition as arising from her belief that the evidence which she had already introduced was sufficient to defeat OCF's motion.

However, both Markowitz's affidavit and his original report make explicit reference to the lack of readable x-rays of Mr. Maiorana: the report states that "I was not able to review adequate films for the evaluation of fibrosis associated with asbestos-related disease." In fact the affidavit was one of Maiorana's main pieces of evidence in opposition to OCF's summary judgment motion. Certainly the discovery of the 1982 X–Rays was likely to have some effect on the report, and might even have caused Markowitz to alter his conclusions regarding the cause of Mr. Maiorana's death. As noted in the April Opinion, Maiorana's choice not to present the new x-rays to Markowitz until after OCF's motion for summary judgment had been granted was clearly a tactical decision which, however unwise, cannot constitute grounds for reopening the earlier decision. *See* April Opinion at 3 n. 2; *cf. Parrilla–Lopez v. United States,* 841 F.2d 16, 19 (1st Cir.1988) (evidence not presented to decisionmaker based on "conscious decision on trial strategy" cannot be grounds for new trial).

Therefore, Maiorana has not met her burden of establishing that the 1982 X–Rays and the Supplemental Report which is dependent upon them constitute "newly discovered evidence" for the purposes of Rule 60(b)(2).

2. **The Supplemental Report Would Not Call For Reversal Of The February Opinion.**

Alternatively, even if the 1982 X–Rays and the Supplemental Report were considered newly discovered evidence, they would not provide a basis for vacating the February Opinion under Rule 60(b)(2).

As set forth in the February Opinion, 758 F.Supp. at 203–05, and explained further in the April Opinion at 4–5 & n. 3, there are two different methods by which Maiorana could have established that her husband's colon cancer was more probably than not caused by exposure to asbestos: (1) she could have introduced direct evidence to indicate that the cancer was caused by asbestos exposure; or (2) she could have introduced epidemiological data indicating a risk factor of at least 2.0, together with evidence indicating that her husband would have qualified as a member of the relevant exposed cohort, to establish that the epidemiological result could properly be applied to his case.

a. *There is no admissible direct evidence of causation.*

■ By the testimony of her medical experts, Maiorana initially attempted to satisfy the first alternative. As discussed in the February Opinion, the opinions of both experts and Mr. Maiorana's personal physician as to causation were inadmissible—the physician's because he had not demonstrated sufficient expertise in the diagnosis of asbestos-related diseases, and the experts'

because the assumptions which underlay their opinions were not adequately supported by the evidence. 758 F.Supp. at 203–04. None of Maiorana's subsequent submissions has even attempted to fill in the missing support, *see* April Opinion at 5, from which it may be deduced that the assumptions are not supportable. Because the Supplemental Report depends upon these same assumptions, its conclusion regarding the cause of Mr. Maiorana's disease is also inadmissible.[2]

 Nor would the direct evidence of asbestosis itself support a finding that the colon cancer was caused by asbestos exposure. As Markowitz himself testified in his original affidavit, there is simply no causal connection between a disease such as asbestosis and colon cancer. Of course, given the assumption—conceded by OCF for purposes of its summary judgment motion only, *see* 758 F.Supp. at 200 & n. 2—that asbestos exposure does increase the likelihood of contracting colon cancer, and the assumption that asbestosis is also caused by asbestos exposure, there will necessarily be a positive correlation between the incidence of the two diseases, but this statistical observation does not satisfy the requirement for direct evidence of biological causation.

b. *Maiorana has presented no new epidemiological data.*

 As for the second alternative, epidemiological data combined with evidence that the results would be applicable to Mr. Maiorana, Maiorana originally failed on both counts: she failed to present either epidemiological data which clearly indicated a relative risk of 2.0, 758 F.Supp. at 203, or evidence that her husband had ever been exposed to asbestos in a degree which might qualify him as a member of any exposed cohort for any epidemiological study. *Id.* at 204–05. Indeed, as the February Opinion explained, Maiorana had presented no evidence that her husband's exposure to asbestos was great enough to have had any adverse effect on his health. *Id.*

If the Supplemental Report were treated as newly discovered evidence, it would be sufficient to create a genuine issue of fact only as to this latter point: assuming that Markowitz's diagnosis of Mr. Maiorana's parenchymal asbestosis is correct,[3] it seems reasonable to conclude that Mr. Mairoana's asbestos exposure was sufficient to affect his health.

However, in order to carry her burden of proving that her husband's colon cancer was more probably than not caused by asbestos exposure, Maiorana would also need to show that a person with parenchymal asbestosis had a relative risk of at least 2.0 for colon cancer. Because she has presented no studies which indicate any statistical correlation between the incidence of parenchymal asbestosis and colon cancer, let alone one which shows that a person with asbestosis of the degree found by Markowitz would have a relative risk of more than 2.0 for colon cancer, Maiorana has not established any basis for overturning the prior decision.

*Conclusion*

Because Maiorana has failed to establish that the Supplemental Report constitutes "newly discovered evidence which by due diligence could not have been discovered" prior to the grant of summary judgment in OCF's favor, and because the evidence presented in the Supplemental Report itself would not justify overturning the prior de-

---

**2.** In other words, the Supplemental Report merely supports the experts' assumption that Mr. Maiorana had been exposed to asbestos. As this assumption was not itself an issue in the February Opinion, 758 F.Supp. at 204, the Supplemental Report offers no grounds for reversing the prior rejection of the experts' conclusions.

**3.** OCF argues that there is no evidence to indicate that Markowitz is qualified to diagnose asbestosis from chest x-rays. However, he is a medical expert and as such his own testimony that he can diagnose the disease must be given some weight. Drawing all inferences in Maiorana's favor the Supplemental Report would, if treated as newly discovered evidence, at least create a genuine issue as to whether Mr. Maiorana suffered from asbestosis.

cision, Maiorana's motion for reconsideration under Rule 60(b)(2) is hereby denied.

It is so ordered.